

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

JPM:AP    *271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 22, 2023

By Email and ECF

The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Amaury Guzmán
             Criminal Docket No. 23-MJ-160

Dear Judge Pollak:

      The government submits this letter in advance of the defendant's initial appearance and detention hearing in the above-referenced case. For the reasons stated below, the government requests that the defendant be detained pending trial. He poses a danger to the community and also constitutes a flight risk.

    A.    Background

      The defendant is charged by complaint with participating in a violent carjacking and brandishing a firearm during a crime of violence. On November 22, 2022, at approximately 1:30 a.m., a victim of the defendant's offenses, "John Doe," was approached by five males who were driving a stolen white Mercedes Benz (the "Mercedes") near 80-49 Kent Street in Queens, New York. The Mercedes had been reported stolen from a residence in Carteret, New Jersey on November 20, 2022. One of the five males tackled John Doe to the ground as another pointed a firearm in his direction. As John Doe was held at gunpoint, one of the males forcibly stole, among other things, John Doe's cell phone, car keys, wallet, and two envelopes collectively containing approximately $13,935 in cash. Some of the men fled in John Doe's black BMW X5 (the "BMW") as the others drove away in the Mercedes.

      Following the robbery and carjacking, John Doe was able to track his stolen cell phone using a different phone and reported the location of the stolen phone to responding police officers. John Doe accompanied the officers in their marked police vehicle to look for the five perpetrators and the stolen BMW. During the canvass, the officers observed the stolen BMW driving at a high rate of speed the wrong way on a one-way street of a residential block causing the officers to swerve to avoid crashing into the BMW. The officers continued their pursuit of

the BMW for a short distance until they observed it collide with the Mercedes driven by the other males involved in the carjacking.  The collision caused the Mercedes to flip on its side next to a house.

After the collision below (less than 10 minutes after the carjacking), a male later identified as Jonathan Rodriguez, fled from one of the vehicles but was apprehended a short distance away after a brief foot chase.  Responding officers also found a second male, later identified as Junior Marmol Duran, hiding underneath a truck a short distance from the collision.  Near him, police recovered a fanny pack containing the envelopes with the cash stolen from John Doe.  A third male, later identified as Juan Acevedo, was also found unconscious on the ground near the collision.  He was later transported to a local hospital for treatment to a fractured pelvis.



All three men were arrested and charged by complaint with violations of Title 18, United States Code, Sections 2119 and 924(c) in connection with the carjacking.  On November 26, 2022, Acevedo was arraigned on the complaint and the Honorable Lois Bloom entered an order of detention.  On November 28, 2022, Rodriguez and Duran were arraigned on the complaint and Judge Bloom also entered orders of detention as to both men.

NYPD investigators reviewing the scene of the collision recovered a loaded 9mm firearm inside the Mercedes without an apparent serial number.  Inside the stolen BMW, investigators also recovered a blue iPhone 12 Pro (the "Blue iPhone") from the driver's side that did not belong to the victim.  As laid out in the complaint, a partial forensic extraction of the Blue iPhone conducted pursuant to a search warrant, revealed that it was associated with an iCloud account belonging to the defendant.  The forensic extraction also led to the recovery of photos of the defendant directly from the Blue iPhone.

Additionally, investigators identified a phone number associated with the Blue iPhone that the defendant was using near the time of the carjacking.  Pursuant to a search warrant, investigators obtained historical cell site records for that phone number, which placed

the defendant's Blue iPhone at the location where the Mercedes was stolen at the time of the theft on November 20, 2022. The same records also placed the Blue iPhone squarely at the location of the carjacking where John Doe's BMW was stolen.

Most troublingly, the violent carjacking appears to be only one of a spate of armed robberies carried out by the defendant and his co-conspirators in the hours preceding the carjacking. Several victims reported being robbed by Hispanic males driving a white Mercedes Benz. The earlier robberies took place a short driving distance away from the carjacking in a nearby precinct. Those victims were robbed of cash, winter jackets, and cell phones. Following the collision of the stolen cars, police recovered some of those stolen items from the wrecked Mercedes.

B.  Defendant's Criminal History

In addition to the federal firearm-related charge that the defendant currently faces, he also has an open indictment in Queens charging him with Criminal Possession of a Weapon in the Second Degree. In that case, NYPD executed a search warrant at a residence in Queens on August 4, 2022. NYPD officers located the defendant at that location inside a bedroom where they recovered two loaded firearms and numerous rounds of ammunition of different caliber. Police also recovered a piece of identification belonging to the defendant inside of a dresser drawer in that bedroom.

On December 14, 2021, the defendant was convicted of Attempted Assault in the Third Degree in connection with an incident that took place in Brooklyn on February 5, 2021. In that case, the defendant followed the victim and in a fit of road rage rammed his car into the victim's car. The defendant then got out of his car and punched the victim multiple times in the face before fleeing. The victim followed the defendant to get his license plate and, upon noticing that he was being followed, the defendant reversed into the victim's car.

On November 18, 2021, the defendant pled guilty to felony assault and was ultimately sentenced to Assault in the Third Degree on July 28, 2022 as part of a conditional plea. In that case, the defendant and others assaulted and robbed a Doordash deliveryman of his bike, cell phone, and delivery bag and then fled on mopeds. Shortly thereafter, they assaulted and robbed a second person who flagged down police. The defendant was arrested after crashing his moped into the back of a police car and fleeing on foot. Police later recovered the deliveryman's cell phone from the defendant after his apprehension. Police also recovered the Doordash delivery bag from the defendant's moped.

C.  Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must

3

be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); see also United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004).

The concept of "dangerousness" encompasses not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "the danger that the defendant might engage in criminal activity to the detriment of the community." United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

The Bail Reform Act lists four factors to be considered in the detention analysis, whether for risk of flight or dangerousness: (1) the nature and circumstances of the crimes charged; (2) the history and characteristics of the defendant; (3) the seriousness of the danger posed by the defendant's release; and (4) the evidence of the defendant's guilt.  See 18 U.S.C. § 3142(g); see also United States v. Jacobson, 502 F. App'x 31, 32 (2d Cir. 2012).  Where the evidence of guilt is strong, it provides "a considerable incentive to flee." United States v. Millan, 4 F.3d 1038, 1046 (2d Cir. 1993); see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased").  Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight.  See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

Under the Bail Reform Act, the government may proceed by proffer, United States v. Ferranti, 66 F.3d 540, 541 (2d Cir. 1995); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).  Furthermore, "[t]he rules of evidence do not apply in a detention hearing." United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); see also United States v. Agnello, 101 F. Supp. 2d 108, 110 (E.D.N.Y. 2000) ("[E]vidence may be supplied through proffers and hearsay information, and the rules of evidence do not apply.").

D.      The Defendant Should Be Detained

For the reasons described below, the defendant poses a significant risk of flight and a clear continuing danger to the community.  Specifically, the presently known facts suggest a reasonable likelihood that the defendant, if released pending trial, will flee, and/or will resume criminal activity to the detriment of the community.  In light of the charges against him, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the defendant's appearance in court or the safety of the community should he be released.  As further described below, the defendant cannot overcome this presumption in light of the strength of the government's case.  Accordingly, a permanent order of detention should therefore be entered.

Each of the factors enumerated in 18 U.S.C. § 3142(g) weighs heavily in favor of pretrial detention.  First, the charged conduct is very serious.  The charged offense involved a violent armed carjacking by an organized group who were marauding in the middle of the night.  The defendant's conduct also involves a dangerous attempt to escape from law enforcement, involving driving the wrong way down a street, causing a violent car crash, and immediate flight

from that scene.  The defendant, already using a stolen vehicle, stole another vehicle and significant property from John Doe.  In addition, there is evidence connecting the defendant and his co-conspirators to at least two additional gunpoint robberies that immediately preceded the charged offenses.  Their pattern of targeting individuals for robbery on the streets of Queens demonstrates a complete disregard for the safety of the community.  This conduct also shows a level of recklessness by committing multiple gunpoint robberies on the same day within a short timeframe in similar fashion.  Furthermore, all of this new conduct was committed while the defendant was on bail for a state firearms offense, evidencing the futility of supervision here.

Second, the evidence against the defendant is strong.  Among other things, the victim was able to track his stolen phone (and by extension, his stolen BMW) within minutes of the carjacking; his stolen property (as well as the stolen property of other robbery victims) was recovered less than 10 minutes after the carjacking; and the recovery of the defendant's Blue iPhone from the driver's side of the BMW establishes that he commandeered that vehicle following the gunpoint carjacking and fled without it after the collision.

Third, the defendant poses a serious flight risk, as demonstrated immediately after the collision by fleeing responding officers.  The defendant additionally faces a statutory maximum of fifteen years in prison in addition to a consecutive term of imprisonment for brandishing a firearm in furtherance of the carjacking.  These penalties give the defendant an incentive to flee.  See, e.g., Jackson, 823 F.2d at 7.  When the incentive to flee is so strong, no combination of sureties and other restrictions can assure the defendant's appearance.  See, e.g., United States v. English, 629 F.3d 311, 321-22 (2d Cir. 2011) (affirming detention in part because the defendant faced a presumption against release and a mandatory minimum sentence that incentivized fleeing); see also United States v. Cisneros, 328 F.3d 610, 618 (10th Cir. 2003) (the defendant was a flight risk because her knowledge of the seriousness of the charges against her gave her a strong incentive to abscond); United States v. Townsend, 897 F.2d 989, 995 (9th Cir. 1990) ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").  As noted above, he also committed the instant firearms-related offenses while out on bail on an indictment charging him with weapons possession, indicating a dangerous proclivity for guns, an unwillingness to abide by the law, and a risk he will refuse to return to court.

5

E.  Conclusion

For the reasons set forth above, the government, therefore, respectfully requests that the defendant be held without bail pending trial because no combination of conditions can ensure his reappearance or the safety of the community.

Respectfully submitted,

BREON PEACE
United States Attorney

By:  /s/
Andrés Palacio
Assistant U.S. Attorney
(718) 254-6215

cc: Clerk of Court (CLP)
    Defense Counsel (via ECF and email)

6